1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

DARYL KEITH WOODS,

                                        Petitioner,

        vs.

B.K. WONG, Warden,

                                        Respondent.

CASE NO. 10-cv-00693 JLS (WMc)

REPORT AND
RECOMMENDATION OF UNITED
STATES MAGISTRATE JUDGE RE:
DENIAL OF PETITION FOR WRIT
OF HABEAS CORPUS

## I.

## INTRODUCTION

        Daryl Keith Woods ("Petitioner"), a California inmate proceeding *pro se* and *in forma pauperis,* challenges his convictions in San Diego Superior Court Case Nos. SCD200184 and SCS214181 with a Petition for Writ of Habeas Corpus ("Petition"; Doc. No. 1) in this Court pursuant to 28 U.S.C. § 2254.  Currently, Petitioner is serving a state prison term of twenty-seven years comprised of: (a) twenty-three years for five counts of robbery in Case No. SCD200184 (Lodgment 4 at p. 1), and (b) four years for two counts of robbery in Case No. SCD214181.  (Lodgment 4 at p. 2).

        Petitioner claims the following: (1) he received ineffective assistance of trial and appellate counsel; (2) his procedural due process rights were violated when he was not arraigned before a Magistrate Judge within forty-eight hours; (3) his equal protection, procedural due process and state law right were violated when police officers denied Petitioner's request for counsel during a curbside

lineup, and violated administrative policies during the lineup and photographic display; (4) California law was violated when the sentencing judge imposed the upper term on Count 1A; (5) he suffered cruel and unusual punishment, Double Jeopardy violations, and a violation of California law when the trial court failed to stay certain counts under California Penal Code section 654, and (6) there was insufficient evidence of Petitioner's mental competency to stand trial in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution.

This Report and Recommendation is submitted to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule H.C.2 of the United States District Court for the Southern District of California. After reviewing the Petition and Memorandum of Points and Authorities in support thereof [Doc. No. 1-1], Respondent's Answer [Doc. No. 5] and Memorandum of Points and Authorities in support thereof [Doc. No. 5-1], Petitioner's Traverse [Doc. No. 6], and all of the supporting documents submitted by the parties, the Court recommends the Petition be **DENIED** for the reasons stated below.

## II.

## PROCEDURAL HISTORY

### A. State Court Proceedings

#### 1. Underlying Offenses

##### a. Case No. SCD200184

On July 14, 2006, the San Diego District Attorney's office filed a Complaint charging Petitioner with one count of robbery under California Penal Code section 211.[1]  (Clerk's Tr.; Lodgment 1 at pp. 1-2.)  In addition, the District Attorney alleged Petitioner had a prison prior under section 667.5, subd. (b); twelve serious felony priors under section 667, subd. (a), and section 1192.7, subd. (c), and eleven strike priors under section 667, subds. (b) through (i), section 1170.12, and section 668. (Clerk's Tr.; Lodgment 1 at pp. 2-5.)  Petitioner was arraigned on July 14, 2006, and he pled not guilty.  (Clerk's Tr.; Lodgment 1 at p. 55.)

On July 20, 2006, the District Attorney filed an Amended Complaint charging Petitioner with

---

[1] All further references in this Report and Recommendation are to the California Penal Code, unless otherwise noted.

an additional six counts of robbery under section 211, and withdrew one of the serious felony priors. (Clerk's Tr.; Lodgment 1 at pp. 7-11.)  Again, Petitioner was arraigned on the same day and pled not guilty. (Clerk's Tr.; Lodgment 1 at p. 56.)  On September 13, 2006, the District Attorney filed a Second Amended Complaint withdrawing two counts of robbery (Counts Two and Three).

After the state court judge set a trial date, a doubt arose as to Petitioner's mental competence. As a result, on May 16, 2007, the state court judge issued an order for: (1) a determination of Petitioner's mental competence to take place on May 25, 2007, and (2) a hearing to take place on June 11, 2007. (Clerk's Tr.; Lodgment 1 at p. 63.)   At the June 11, 2007 hearing, the state court judge issued an order for a second mental competence evaluation (Lodgment 1 at p. 64), which Valerie Rice, Ph.D., conducted on July 3, 2007.  (Clerk's Tr.; Lodgment 1 at pp. 22-26.)  Based on her medical findings, Dr. Rice concluded Petitioner was not suffering from a mental illness or disorder, and as a result, Petitioner was competent to stand trial.  (Clerk's Tr.; Lodgment 1 at p. 26.)  On July 18, 2007, the state court judge found Petitioner mentally competent to stand trial.  (Clerk's Tr.; Lodgment 1 at p. 27.)  Petitioner posted a $500,000 bond on August 22, 2007,  and was permitted to remain at liberty until trial, which was set for October 25, 2007.  (Clerk's Tr.; Lodgment 1 at pp. 67-68.)

### b.  Case No. SCS214181

On September 28, 2007, the District Attorney filed a new Complaint charging Petitioner with two counts of robbery under section 211, and one count of possession of a controlled substance under California Health and Safety Code section 11350, subd. (a).  (Clerk's Tr.; Lodgment 1 at pp. 77-79.)  Further, the Complaint contained special allegations that Petitioner committed each count while released from custody on bail in violation of section 12022.1, subd. (b).  (Clerk's Tr.; Lodgment 1 at pp. 77-79.)  In addition, the District Attorney alleged twenty-one prior felonies for the purposes of probation denial under section 1203, subd. (e)(4); eighteen prison priors for the purpose of establishing Petitioner has not remained free of prison custody or free of the commission of a felony for five years subsequent to his release from prison under section 667.5, subd. (b), and section 668; seventeen serious felony priors under section 667, subd. (a)(1), section 668, and section 1192.7, subd. (c); and seventeen strike priors under section 667, subds. (b) through (i), section 1170.12, and section 668.  (Clerk's Tr.; Lodgment 1 at pp. 80-83.)

The same day, September 28, 2007, Petitioner was arraigned and pled not guilty. (Clerk's Tr.; Lodgment 1 at p. 98.) The state court judge remanded Petitioner back to custody and set bail at $1 million. (Clerk's Tr.; Lodgment 1 at p. 98.) On November 28, 2007, a preliminary hearing was held in Case No. SCS214181. (Lodgment 7.)

         *c. Petitioner's Plea*

As indicated above, Case No. SCS214181 arose before the state court heard Case No. SCD200184. On November 6, 2007, after Petitioner was placed in custody for Case No. SCS214181, the state court judge increased bail to $3 million and set a trial date for February 1, 2008 in Case No. SCD200184. (Clerk's Tr.; Lodgment 1 at p. 70.)

On January 30, 2008, Petitioner informed the state court of his intent to change his not guilty plea in both cases. (Clerk's Tr.; Lodgment 1 at p. 74.) As a result, on January 30, 2008, state court Judge Jeffrey F. Fraser presided over a Change of Plea and Immediate Sentencing hearing. (Lodgment 13.)

In assessing Petitioner's ability to understand the nature of the proceedings, the state court judge asked Petitioner if he was impaired in a way that would preclude him from understanding court proceedings. (Rep. Appeal Tr.; Lodgment 13 at p. 2:6-8.) Petitioner responded he was not impaired. (Rep. Appeal Tr.; Lodgment 13 at p. 2:9.) Additionally, the judge asked Petitioner if he had sufficient time to consult with his attorney about the charges against him and any potential defenses. (Rep. Appeal Tr.; Lodgment 13 at p. 2:10-11.) Petitioner responded, "yes." (Rep. Appeal Tr.; Lodgment 13 at p. 2:12.)

Further, the judge advised Petitioner of his constitutional rights and asked Petitioner if he waived those rights. (Rep. Appeal Tr.; Lodgment 13 at p. 2:13-18.) Petitioner voluntarily waived his rights at the hearing. (Clerk's Tr.; Lodgment 1 at p. 32, 88; Rep. Appeal Tr., Lodgment 13 at p. 2:19-20.) The judge asked Petitioner if anybody coerced him into pleading guilty. (Rep. Appeal Tr.; Lodgment 13 at p. 2:21-22.) Petitioner responded, "no." (Rep. Appeal Tr.; Lodgment 13 at p. 2:23.) Finally, the judge notified Petitioner of the maximum penalty in each case (Rep. Appeal Tr.; Lodgment 13 at p. 2:24-3:2) and asked Petitioner whether he had initialed and signed each written plea and understood the terms contained therein. (Rep. Appeal Tr.; Lodgment 13 at p. 3:7-9, 11-12.)

Petitioner responded, "yes."  (Rep. Appeal Tr.; Lodgment 13 at p. 3:10-13.)

In Case No. SCD200184, Petitioner: (1) entered a plea of no contest to five counts of robbery under section 211 (Counts One, Four, Five, Six and Seven); (2) admitted one serious felony prior under section 667, subd. (a), and eleven strike priors under section 667, subd. (b) through (i), and section 1170.12; and (3) requested immediate sentencing.  (Clerk's Tr.; Lodgment 1 at p. 74.)  After the state court judge granted the District Attorney's motion to dismiss any remaining counts and to strike any remaining allegations, the judge sentenced Petitioner to a determinate term of twenty-three years.  (Clerk's Tr.; Lodgment 1 at p. 74.)  The judge recited the twenty-three term as follows: Count One, an upper term of ten years; Counts Four through Seven, a one-third middle term of two years for each count consecutively; and the serious felony prior under section 667, subd. (a)(1), five years consecutively.  (Clerk's Tr.; Lodgment 1 at p. 74.)

In Case No. SCS214181, Petitioner: (1) entered a plea of no contest to two counts of robbery under section 211, including a special allegation of committing a felony while on probation in Count One; and (2) admitted eleven strike priors under section 667, subd. (b) through (i), and section 1170.12.  (Clerk's Tr.; Lodgment 1 at p. 104.)  Again, after the state court judge granted the District Attorney's motion to dismiss any remaining counts and to strike any remaining allegations, the judge sentenced Petitioner to a determinate term of four years to run consecutively to Petitioner's sentence in Case No. SCD200184.  (Clerk's Tr.; Lodgment 1 at p. 104.)  The judge recited the four-year term as follows: Count One, including the enhancement, one-third middle term of two years; and Count Two, one-third middle term of two years consecutively.  (Clerk's Tr.; Lodgment 1 at p. 104.)

*d. Appeal*

On March 19, 2008, Petitioner filed: (1) a notice of appeal challenging the validity of the plea based on the sentence or other matters occurring after the plea and (2) a request for certificate of probable cause in San Diego Superior Court.  (Clerk's Tr.; Lodgment 1 at pp. 48-49.)  On March 27, 2008, the state court judge denied Petitioner's request for a certificate of probable cause.  (Clerk's Tr.; Lodgment 1 at p. 53.)

On June 30, 2008, Petitioner, by and through his appellate counsel, filed an appeal with the California Court of Appeal, Fourth Appellate District, Division One, requesting the Court of Appeal

review the trial court record for error as required under *People v. Wende*, 25 Cal. 3d 436 (1979) and *Anders v. California*, 386 U.S. 738 (1967). (Lodgment 2 at p. 4.) In his brief to the Court of Appeal, Petitioner's counsel failed to affirmatively allege any arguable issue, but suggested to the court a possible issue to consider in conducting its independent review of the record: whether Petitioner's pleas were constitutionally valid. (Lodgment 2 at pp. 4-5.)

Accepting Petitioner's counsel's ostensible concession that no arguable issues could be found, the Court of Appeal granted Petitioner thirty days to file a supplemental brief containing an arguable appellate issue. (Lodgment 3.) Petitioner failed to file a supplemental brief. (Lodgment 4 at p. 2.)

On August 28, 2008, after conducting a *Wende* review, the Court of Appeal found the record "disclosed no reasonably arguable appellate issue," and affirmed the trial court's judgment. (Lodgment 4 at p. 3.) Petitioner did not file an appeal to the California Supreme Court.

**2. Collateral Review**

On April 1, 2008, before Petitioner filed his *Wende* appeal on direct review, Petitioner filed his first petition for writ of habeas corpus in San Diego Superior Court. (Lodgment 6.) In the petition, Petitioner set forth two claims: (1) violation of due process under the Fourteenth Amendment of the U.S. Constitution, the Sixth Amendment, the California Constitution, and California Penal Code section 825 for failure to be brought before a Magistrate Judge within forty-eight hours of his arrest, and (2) violation of Petitioner's "due process, right to testify or to be heard and right to a trial" under the Fifth, Sixth and Fourteenth Amendments and the California Constitution for the trial court's failure to hear Petitioner's motions. (Lodgment 6 at pp. 3-5.) On May 21, 2008, the superior court denied the petition because the court lacked jurisdiction due to Petitioner's then pending appeal on direct review. (Lodgment 8 at p. 2:18-19.)

On November 5, 2008, Petitioner filed his second petition for writ of habeas corpus in San Diego Superior Court. (Lodgment 7.) In the petition, Petitioner set forth six claims by re-alleging the first claim from the first petition, omitting the second claim from the first petition, and alleging five new claims. Petitioner raised the following six claims: (1) violation of procedural due process under the Sixth and Fourteenth Amendments to the U.S. Constitution and the California Constitution for

failure to be arraigned before a Magistrate Judge within forty-eight hours of his arrest; (2) willful violation of procedural due process at the curbside photo-line up; (3) violation of Sixth Amendment rights for imposition of the upper term on Count 1A without allowing a jury to determine the aggravating factors; (4) violation of Sixth and Fourteenth Amendment rights for failure to impose a stay on Counts 4A, 5A, 6A, 7A, 1B and 2B under section 654; (5) violation of Sixth Amendment right to trial due to insufficient evidence of Petitioner's competency to stand trial, and (6) ineffective assistance of counsel. (Lodgment 7.)

On December 30, 2008, the San Diego Superior Court denied Petitioner's second petition on the ground that Petitioner failed to meet his burden of setting forth a *prima facie* statement of facts that would entitle him to relief. (Lodgment 8 at p. 3:9-10.) In addition, after review of the record, the court made the following findings: (a) Petitioner was duly arraigned following his arrests; (b) Petitioner's due process rights at the curbside line-up were not deprived; (c) sufficiency of the evidence claims are not cognizable on collateral review; (d) Petitioner may not be heard on a sentencing error claim because Petitioner's negotiated plea significantly reduced his prison term; (e) absence of a sentencing error, and (f) Petitioner's ineffective assistance of counsel claim lacked merit because Petitioner: (i) provided no evidence supporting his claim, (ii) read and understood the terms set forth in the plea agreement, into which he knowingly, intelligently and voluntarily entered and (iii) failed to show prejudice. (Lodgment 8 at pp. 3:16-4:24.)

On March 3, 2009, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Fourth Appellate District, Division One. (Lodgment 9.) In this petition, Petitioner alleged the same six claims raised in his second petition in San Diego Superior Court. (Lodgment 9.) On May 6, 2009, in a one-page opinion, the Court of Appeal adopted the San Diego Superior Court's reasoning and denied the petition. (Lodgment 10.)

On June 11, 2009, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court alleging the same six claims raised in both the San Diego Superior Court and the Court of Appeal. (Lodgment 11.) On November 10, 2009, the California Supreme Court denied the petition. (Lodgment 12.)

/ / /

**B.  Federal Court Proceedings**

On April 1, 2010, Petitioner filed the instant Petition asserting the same six claims raised on collateral review in state court.  (Pet.; Doc. No. 1.)  On June 16, 2010, Respondent filed an Answer with a Memorandum and Points and Authorities in support thereof denying each and every allegation in the Petition.  (Ans.; Doc. No. 5 at pp. 2:12-3:16.)  Respondent concedes the claims currently before this Court appear to be exhausted and timely.  (Ans.; Doc. No. 5 at p. 2:8.)  On July 9, 2010, Petitioner filed a Traverse in which he re-alleges the arguments raised in his petition.  (Trav.; Doc. No. 6 a p. 2.)

**III.**

**STATEMENT OF FACTS**

The facts of the underlying offenses are not pertinent to Petitioner's claims because "a guilty plea represents a break in the chain of events which has preceded it in the criminal process."  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  To the extent Petitioner seeks federal habeas relief based on constitutional errors preceding the plea and sentencing immediately thereafter, the facts of the underlying offenses are irrelevant to the Court's analysis because "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence."  *U.S. v. Broce*, 488 U.S. 563, 569 (1989).

Thus, the dispositive factual context of this case is constituted by the limited facts surrounding the plea, including the state court judge's notice and Petitioner's waiver of his constitutional rights. The pertinent facts as they relate to the plea are contained in the procedural history of this Report and Recommendation.[2]  *See* Section II.A.1, *supra*, at pp. 2:17-6:12.

**IV.**

**STANDARD OF REVIEW**

Title 28, United States Code section 2254 and the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified at Title 28, United States Code section 2254, subpart(d)(1), sets forth the following scope of review for federal habeas corpus claims:

---

[2] For a complete recitation of the relevant facts of the underlying offenses see the California Court of Appeal's decision denying Petitioner's appeal on direct review.  (Lodgment 4 at p. 2.)

1    (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall
     entertain an application for a writ of habeas corpus in behalf of a person in custody
2    pursuant to the judgment of a State court only on the ground that he is in custody in
     violation of the Constitution or laws or treaties of the United States. [. . .]
3    (d) An application for a writ of habeas corpus on behalf of a person in custody
     pursuant to the judgment of a State court shall not be granted with respect to any
4    claim that was adjudicated on the merits in State court proceedings unless the
     adjudication of the claim–
5        (1) resulted in a decision that was contrary to, or involved an unreasonable
     application of, clearly established Federal law, as determined by the Supreme Court
6    of the United States; or
7        (2) resulted in a decision that was based on an unreasonable determination
     of the facts in light of the evidence presented in the State court proceeding.

8    28 U.S.C. § 2254(a), (d)(1)-(2).

9    When determining what constitutes "clearly established federal law" under section

10   2254(d)(1), federal courts look to U.S. Supreme Court holdings at the time of the state court's

11   decision. *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Williams v. Taylor*, 529 U.S.

12   362, 412 (2000)); *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) (citing *Andrade* to

13   explain clearly established federal law is the governing legal principle or principles set forth by the

14   U.S. Supreme Court at the time the state court renders its decision). In addition, Ninth Circuit law

15   may be considered for its "persuasive authority in applying Supreme Court law." *Lewis v. Mayle*,

16   391 F.3d 989, 995 (9th Cir. 2004) (quoting *Van Tran v. Lindsey*, 212 F.3d 1143, 1154 (9th Cir.

17   2000)), *overruled in part on other grounds by Andrade*, 538 U.S. 63 (2003)); *see also Clark v.*

18   *Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003) (noting while circuit law may be persuasive

19   authority, "only the [U.S.] Supreme Court's holdings are binding on the state courts and only those

20   holdings need be reasonably applied").

21   The "contrary to" and "unreasonable application" clauses contained in section 2254(d)(1)

22   have independent meaning. *Williams*, 529 U.S. at 404-05; *Lambert*, 393 F.3d at 974; *Van Lynn v.*

23   *Farmon*, 347 F.3d 735, 738 (9th Cir. 2003). A state court decision is "contrary to" clearly

24   established federal law as determined by the U.S. Supreme Court if (1) the state court applies a

25   rule different from the governing law set forth in Supreme Court cases, or (2) the state court

26   confronts a set of facts that are materially indistinguishable from a Supreme Court case, but still

27   reaches a different result. *Williams*, 529 U.S. at 405-06, 412; *Bell v. Cone*, 535 U.S. 685, 694

28   (2002); *Andrade*, 538 U.S. at 73; *Lambert*, 393 F.3d at 974; *Clark*, 331 F.3d at 1067. A state court

is not required to even be aware of clearly established applicable Supreme Court cases, so long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court decision involves an unreasonable application of Supreme Court law if (1) the state court identifies the correct governing rule, but unreasonably applies the rule to a new set of facts, or (2) "the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Andrade*, 538 U.S. at 76; *Lambert*, 393 F.3d at 974; *Clark*, 331 F.3d at 1067. For a state court decision to be an unreasonable application of clearly established federal law, the state court decision must be more than simply incorrect or erroneous; instead, the state court's decision must be "objectively unreasonable." *Rompilla v. Beard*, 545 U.S. 374, 380 (2009) (citing *Wiggins*, 539 U.S. at 520-21); *Williams*, 529 U.S. at 409; *Vasquez*, 572 F.3d 1029, 1035 (citing *Andrade*, 538 U.S. at 75); *see also Hernandez v. Small*, 282 F.3d 1132, 1140 (9th Cir. 2002) (federal habeas courts determine the reasonableness of the state court's decision, not its reasoning). Thus, this Court will not disturb the decisions of the California state courts with respect to Petitioner's claims unless the state courts' resolutions of those claims were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d); *see also Ramirez v. Castro*, 365 F.3d 755, 762 (9th Cir. 2004).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991); *Plascencia v. Alameida*, 467 F.3d 1190, 1198 (9th Cir. 2006); *Vasquez*, 572 F.3d at 1035; *Van Lynn*, 347 F.3d at 738. If, however, the relevant state court decision does not provide an adequate explanation or a discernable basis for its reasoning on a particular claim, the federal court must conduct "an independent review of the record to determine whether the state court's decision was objectively unreasonable." *Richter v. Hickman*, 578 F.3d 944, 951 (9th Cir. 2009), *rev'd on other grounds*, *Premo v. Moore*, 131 S. Ct. 733 (2011) (quoting *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006)); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir.

1    2003); *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

2                                    **V.**

3                               **DISCUSSION**

4    **A.  Ineffective Assistance of Trial and Appellate Counsel**

5           **1.  Summary of Claim**

6           Petitioner contends his trial and appellate counsel "failed to inform Petitioner of the fact

7    that, sentencing that imposes the upper term with out [sic] a jury's verdict is unconstitutional."

8    (Pet.; Doc. No. 1 at p. 6.)  Further, Petitioner contends trial counsel negotiated an "unconstitutional

9    plea agreement," which resulted in the "imposition of the upper term sentence [of five years that]

10   violated Petitioner's 6th Amendment rights". (Pet.; Doc. No. 1 at p. 6.)  In short, Petitioner claims

11   he should have received the "statutory maximum" sentence - the middle term of 3 years - rather

12   than the upper term sentence of five years, which Petitioner agreed to in his plea agreement.

13          **2.  Respondent's Rebuttal**

14          Respondent argues the California courts rejected Petitioner's claim of ineffective assistance

15   of trial counsel and the decisions of those courts are entitled to deference because they are not

16   contrary to, nor an unreasonable application of, U.S. Supreme Court precedent on the facts

17   presented.  (Ans.; Doc. No. 5 at p. 2:12-15.)  Specifically, Respondent contends: (1) the plea

18   agreement informed Petitioner he had the right to a jury trial, and, because of the plea agreement,

19   Petitioner would be giving up that right; (2) Petitioner signed the agreement indicating he read and

20   understood the agreement, and (3) counsel also signed the agreement, indicating he had discussed

21   the agreement with Petitioner.  (Mem. P. & A., Doc. No. 5-1 at p. 4:16-21; Clerk's Tr., Lodgment

22   1 at pp. 32-34.)  Further, Respondent argues the trial court, in accepting the plea, informed

23   Petitioner he had the right to a jury trial if he pled guilty or no contest, and the court asked

24   Petitioner if he gave up that right.  (Rep. Appeal Tr.; Lodgment 13 at p. 2:19.)  Petitioner said

25   "yes."  (Rep. Appeal Tr.; Lodgment 13 at p. 2:20.)

26          Additionally, Respondent argues Petitioner knowingly and intelligently waived his right to

27   a jury trial on the imposition of the upper term because he negotiated and received the benefit of a

28   specified prison term, evidenced by his initials next to the waiver of his jury trial right set forth in

1   the plea agreement.  (Mem. P. & A.; Doc. No. 5-1 at p. 9:19-23.)

2        Finally, Respondent argues Petitioner cannot show prejudice as required under *Strickland*

3   *v. Washington*, 466 U.S. 668 (1984).  (Mem. P. & A.; Doc. No. 5-1 at p. 9:24.)  In exchange for his

4   twenty-seven year sentence, Petitioner avoided a sentence of over 100-years-to-life.  (Mem. P. &

5   A.; Doc. No. 5-1 at p. 9:24-25.)  Moreover, the trial court had ten prior strikes with which to

6   properly impose an upper term without a jury.  (Mem. P. & A.; Doc. No. 5-1 at p. 10:5.)

7        **3. Relevant Law**

8             a. <u>*Strickland* Standard - Ineffective Assistance of Counsel</u>

9        The Sixth Amendment to the United States Constitution provides "[i]n all criminal

10   prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his

11   defense."  U.S. CONST. Amend. VI.  The clearly established United States Supreme Court law

12   governing ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, *supra*..

13   *See Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009) ("[T]his Court has repeatedly applied

14   [the *Strickland*] standard to evaluate ineffective-assistance-of-counsel claims where there is no

15   other Supreme Court precedent directly on point"); *Moore v. Czerniak*, 574 F.3d 1092, 1100 (9th

16   Cir. 2009), *rev'd on other grounds sub nom.*, <u>*Premo*</u>, *supra*, 131 S. Ct. 733 (2011) (stating the rule

17   set forth in *Strickland* is "clearly established federal law" under AEDPA); *Sims v. Brown*, 425 F.3d

18   560, 584 (9th Cir. 2005); *see also People v. Gamache*, 48 Cal. 4th 347, 391 (Cal. 2010)

19   (describing the *Strickland* standard as a "settled standard" in assessing ineffective assistance of

20   counsel claims in California).

21        For an ineffective assistance of counsel claim to provide a basis for habeas relief, Petitioner

22   must satisfy *both* prongs of the two-prong test laid out in *Strickland*.  First, he must show

23   "counsel's performance was deficient."  *Strickland*, 466 U.S. at 687.  "This requires showing that

24   counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

25   defendant by the Sixth Amendment."  *Id*.  In other words, counsel's performance must fall below

26   an "objective standard of reasonableness."  *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  Further,

27   judicial scrutiny of counsel's performance "must be highly deferential" pursuant to a strong

28   presumption that counsel's conduct "falls within the wide range of reasonable professional

assistance," *Strickland*, 466 U.S. at 689, where all significant decisions made by counsel are presumed to have been made in the "exercise of reasonable professional judgment." *Id*. at 690.

Second, Petitioner must show counsel's deficient performance "prejudiced the defense." *Id*. at 687.  To satisfy this prong, Petitioner must demonstrate there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the [pretrial] proceeding would have been different." *Smith v. Spisak*, 130 S. Ct. 676, 685 (2010) (quoting *Strickland*, 466 U.S. at 694).

In the context of a plea bargain, a showing of "prejudice" must demonstrate "counsel's ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  In particular, Petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Premo*, 131 S. Ct. at 745 (quoting *Lockhart*, 474 U.S. at 59); *Womack v. McDaniel*, 497 F.3d 998, 1002 (9th Cir. 2007).

Failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was not constitutionally ineffective.  *See Strickland*, 466 U.S. at 697.

### b. *Guilty Pleas*

A guilty plea[3] is valid if it is both intelligent and voluntary.  *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969) (in addition to the plea being intelligent and voluntary the record must affirmatively disclose the defendant's intelligence and voluntariness); *Brady v. Alabama*, 397 U.S. 742, 747 n. 4 (1970) (same).  Petitioner bears the burden of establishing his guilty plea was unintelligent and involuntary.  *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006) (citing *Parke v. Raley*, 506 U.S. 20, 31-34 (1992)).

A plea is intelligent and voluntary only if the defendant enters into the plea "fully aware of the direct consequences of his plea . . .".  *Id*. at 1080 (quoting *U.S. v. Amador-Leal*, 276 F.3d 511, 514 (9th Cir. 2002)); *see Torrey v. Estelle*, 842 F.2d 234, 236 (9th Cir. 1988) (a "direct"

---

[3] Here, Petitioner pled "no contest" in both cases. (Rep. Appeal Tr.; Lodgment 13 at p. 4:8-14, 19-27.)  A plea of no contest has the same legal effect as plea of guilty.  *See* CAL. PENAL CODE § 1016 (Deering 2011) ("[A] plea of nolo contendre shall be considered the same as a plea of guilty . . . .  The legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes."); *Ortberg v. Moody*, 961 F.3d 135, 137-38 (9th Cir. 1992) (applying *Tollett* to no contest pleas); *see also Miller v. McCarthy*, 607 F.2d 854, 856 (9th Cir. 1979) (explaining federal constitutional principles governing guilty pleas in California apply equally to no contest pleas.)

1   consequence is a result representing a "definite, immediate and largely automatic effect on the

2   range of the defendant's punishment"). Thus, "[b]efore a court may accept a defendant's guilty

3   plea, the defendant must be advised of the range of allowable punishment that will result from his

4   plea." *Little*, 449 F.3d at 1080 (quoting *Torrey*, 842 F.2d at 235). "The essential ingredient is

5   notice of 'the maximum possible penalty provided by law.'" *U.S. v. Barrios-Gutierrez*, 255 F.3d

6   1024, 1027 (9th Cir. 2001) (quoting FED. R. CRIM. P. 11(c)).

7        Further, to be valid, the guilty plea must be free of coercion, misrepresentation, or

8   improper promises. *See U.S. v. Anderson*, 993 F.2d 1435, 1437 (9th Cir. 1993); *Doe v. Woodford*,

9   508 F.3d 563, 570 (9th Cir. 2007) (quoting *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986) ("[a]

10   guilty plea is coerced where a defendant is 'induced by promises or threats which deprive [the

11   plea] of the nature of a voluntary act.'"). The Ninth Circuit accords great weight to the

12   defendant's statements made in open court contemporaneously with his plea agreement. *Id.* at

13   1438 (citing *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986)); *see Blackledge v. Allison*, 431

14   U.S. 63, 73-74 (1977) (representations of the defendant and his lawyer at the plea hearing, as well

15   as any findings made by the judge accepting the plea, constitute a "formidable barrier in any

16   subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption

17   of verity.").

18        The voluntariness of a criminal defendant's plea can be determined "only by considering

19   all of the relevant circumstances surrounding it." *Brady v. U.S.*, 397 U.S. 742, 749 (1970); *see*

20   *Woodford*, 508 F.3d at 570 (relevant circumstances include the defendant's "subjective state of

21   mind" and the "constitutional acceptability" of the external forces inducing the guilty plea). If a

22   defendant does not understand "the nature of the constitutional protections he is waiving," or if he

23   has too incomplete an understanding of the charge such that his plea will not qualify as "an

24   intelligent admission of guilt," a guilty plea may be involuntary. *Henderson v. Morgan*, 426 U.S.

25   637, 645 n. 13 (1976).

26        The intelligent character of a defendant's plea must indicate "sufficient awareness of the

27   relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748. A defendant must have

28   notice of the nature of the charges against him, and he must understand the nature of the

1  constitutional protections waived by his plea, including the right to a jury trial, the right to

2  confront his accuser and cross-examine all witnesses, the privilege against self-incrimination, and

3  the right to present evidence.  *See Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *Boykin*, 395

4  U.S. at 243-44.

5       The Supreme Court has held "[w]hen a criminal defendant has solemnly admitted in open

6  court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise

7  independent claims relating to the deprivation of constitutional rights that occurred prior to the

8  entry of the guilty plea."  *Tollett*, 411 U.S. at 267; *see also Lefkowitz v. Newsome*, 420 U.S. 283,

9  288 (1975) ("The *Brady* trilogy announced the general rule that a guilty plea, intelligently and

10  voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings.

11  This principle was reaffirmed in *Tollett v. Henderson* . . .").  Thus, as a general matter, one who

12  intelligently and voluntarily pleads guilty to a criminal charge "may not subsequently seek federal

13  habeas corpus relief on the basis of pre-plea constitutional violations."  *Moran v. Godinez*, 57 F.3d

14  690, 700 (9th Cir. 1994), *superseded on other grounds by statute*, AEDPA, Pub. L. No. 104-132,

15  110 Stat. 1214, *as stated in McMurtrey v. Ryan*, 539 F.3d 1112, 1119 (9th Cir. 2008); *see U.S. v.

16  Caperell*, 938 F.2d 975, 977 (9th Cir. 1991) ("[A] guilty plea generally waives all claims of

17  constitutional violation occurring before the plea . . .")

18       Accordingly, Petitioner may seek to establish ineffective assistance of counsel with respect

19  to the plea agreement.   Petitioner, however, "may only attack the voluntary and intelligent

20  character of the guilty plea by showing that the advice he received from counsel was not within the

21  range of competence demanded of attorneys in criminal cases."  *Moran*, 57 F.3d at 700 (quoting

22  *Tollett*, 411 U.S. at 267).

23       **4. Recommendation**

24       In this case, the California Court of Appeal "adopt[ed] the superior court's reasoning to

25  deny the petition."  (Lodgment 10.)  In denying Petitioner's ineffective assistance of counsel

26  claim, the Superior Court properly applied *Strickland*, the applicable federal law in ineffective

27  assistance of counsel claims, including claims involving guilty pleas.  The Superior Court

28  concluded:

1

2

3
     Finally, Petitioner's ineffective assistance of trial counsel claim lacks merit. To show that trial counsel was ineffective, Petitioner must show, 1) his counsel's representation was deficient in that it fell "below an objective standard of reasonableness . . . under prevailing professional norms", and 2) his counsel's deficient performance prejudiced his defense.  (*Strickland v. Washington* (1984) 466 U.S. 668, 688; *People v. Ledesma* (1987) 43 Cal.3d 171, 216.)

4

5
[. . .]

6

7

8
     [T]he record shows that Petitioner signed the no contest pleas indicating that he had read the pleas and understood the terms set forth therein.  The record also shows that Petitioner's no contest pleas were knowingly and intelligently made. There is no evidence that Petitioner was pressured to enter into the no contest pleas. The Court of Appeal [on direct review] in fact found that the no contest pleas were constitutionally valid.

9

10

11

12
     Additionally, Petitioner makes no showing whatsoever that he suffered prejudice as a result of his trial counsel's alleged ineffective assistance, and does not show a reasonable probability exists that, but for his trial counsel's failings, the result of his case would have been favorable to him.  Accordingly, this Court need not reach the issue of whether Petitioner's trial counsel's assistance fell outside the range of reasonable professional assistance.  Thus, Petitioner has not made a *prima facie* showing that he received ineffective assistance of trial counsel.

13
(Lodgment 8 at pp. 3:24-28, 4:14-24.)

14
     The state court properly invoked *Strickland* and applied *Strickland*'s prejudice prong to

15
deny Petitioner's claim.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the

16
*Strickland* test first and need not address both prongs if petitioner fails on one); *Weaver v.*

17
*Palmateer*, 455 F.3d 958, 966 (9th Cir. 2006).  Accordingly, the Court concludes the state court's

18
decision finding Petitioner failed to establish prejudice under *Strickland*, was neither contrary to,

19
nor an unreasonable application of, clearly established federal law.

20
     Further, the state court decision was not an unreasonable application of the facts.  First,

21
Petitioner voluntarily and intelligently entered his no contest plea.  In addition, Petitioner presents

22
no evidence showing his counsel or the court failed to adequately advise him about the plea

23
agreement and the constitutional rights forfeited therein.  The following series of exchanges

24
between the sentencing judge and Petitioner during Petitioner's Change of Plea and Immediate

25
Sentencing Hearing demonstrate Petitioner's failure to establish his trial counsel's ineffective

26
assistance:

27
     **COURT: Have you had enough time to talk to your lawyer about the charges and any**

28
     **potential defenses?**

1   **DEFENDANT: Yes.**

2   **COURT: Do you understand you have the following constitutional rights: the right to**

3   **a speedy and public jury trial, the right to confront and cross-examine witnesses,**

4   **remain silent, and present evidence.  Do you understand those rights?**

5   **DEFENDANT: Yes.**

6   **COURT: Do you waive those rights?**

7   **DEFENDANT: Yes.**

8   **COURT: Anybody force you to get you to plead guilty today?**

9   **DEFENDANT: No.**

10   COURT: Do you understand the penalty in case ending 184 is 150 years to life and a

11   $10,000 fine?  That's the maximum.

12   DEFENDANT: Yes.

13   COURT: In the case ending 181, the maximum is 60 years to life and a $10,000 fine?

14   DEFENDANT: Yes.

15   [. . .]

16   **COURT: In each [case] . . . I'm holding up two change of plea forms.  Are these your**

17   **initials and signature on each document?**

18   **DEFENDANT: Yes.**

19   **COURT: Do you understand each and every thing in each document?**

20   **DEFENDANT: Yes, I do.**

21   (Rep. Appeal Tr.; Lodgment 13 at p. 2:10-3:2, 3:7-13) (Emphasis added.)

22   The record indicates when given the opportunity, Petitioner failed to raise any concerns

23   about the content of his plea agreements, counsel's assistance when entering into the plea

24   agreements, or the rights waived as a result.  In fact, Petitioner affirmatively indicated on his

25   written and signed pleas that his trial counsel explained to him the possible consequences of his no

26   contest plea.  Petitioner also stated at the January 30, 2008 sentencing hearing he knew and

27   understood that, by making a plea, he waived his right to a jury trial.  Accordingly, it was

28   unnecessary for a jury to determine the applicability of an upper term sentence because in his plea

bargain, Petitioner waived his right to have a jury determine which term should be imposed. The

state court's decision to deny Petitioner's claim comports with this result. Moreover, Petitioner's

counsel (Leslie Wolf[4]) signed the "Attorney's Statement" section of Petitioner's written plea,

which states in part:

> I, attorney for the defendant in the above-entitled case, personally read and explained to the defendant the entire contents of this plea form and any addendum thereto. I discussed all charges and possible defenses with the defendant, and the consequences of this plea . . . I personally observed the defendant fill in and initial each item, or read and initial each item to acknowledge his/her understanding and waivers.

(Clerk's Tr.; Lodgment 1 at p. 90.)

Thus, when presented with the opportunity during the change of plea and immediate

sentencing hearing to voice any confusion with the plea agreement, Petitioner affirmatively

expressed: (1) he had enough time to talk with his counsel about the charges and any potential

defenses; (2) nobody, including his lawyer, forced him to enter the plea, and (3) his counsel

explained to him the possible consequences of entering a no contest plea.

As a result, the Court finds Petitioner voluntarily and intelligently entered into the plea

agreement, and has failed to demonstrate the advice he received from counsel regarding the waiver

of the right to a jury trial fell outside the range of competence demanded of attorneys in criminal

cases. Accordingly, the Court finds the state court's decision to deny Petitioner's claim under

*Strickland* was not an unreasonable determination of the facts in light of the evidence presented.

In addition, Petitioner fails to demonstrate "a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to trial." *Premo*, 131 S.

Ct. at 745. The plea agreement allowed Petitioner to avoid a sentence of more than 200-years-to-

life in exchange for a determinate twenty-seven-year sentence. Under these circumstances, the

California Court of Appeal reasonably denied Petitioner's claim under *Strickland*'s prejudice

---

[4] In his claim for ineffective assistance of counsel, Petitioner specifically alleges "trial attorney Michael Pedretti and appellate counsel Stephen M. Hinkle: failed to inform Petitioner of the fact that, sentencing that imposes the upper term with out [sic] a jury's verdict is unconstitutional." (Pet.; Doc. No. 1 at p. 6.) Petitioner was represented by two attorneys at the change of plea and sentencing hearing: in Case No. SCS214181, Ms. Wolf, deputy public defender, and in Case No. SCD200184, Mr. Pedretti, deputy alternate public defender. Mr. Pedretti did not sign the "Attorney's Statement" section of Petitioner's written plea.

prong.

Therefore, it is recommended federal habeas relief be **DENIED** on this claim.

**B.** **Procedural Due Process Violation When Petitioner Was Not Arraigned Before a Magistrate Judge Within Forty-Eight Hours**

**1. Summary of Claims**

Petitioner claims his procedural due process rights were twice violated.  First, Petitioner alleges after being arrested for robbery on July 12, 2006, he was "not legally arraigned before a magistrate judge within '48 hours' of said arrest in error."  (Pet.; Doc. No. 1 at p. 9.)  In particular, Petitioner alleges he was held for "fifty-eight hours without counsel being notified and without receiving a phone call," and as a result he "suffered the loss of material and corroborating witnesses" without which he "cannot receive a fair jury trial".  (Pet.; Doc. No. 1 at p. 9.)

Second, after again being arrested and detained on September 25, 2007, Petitioner alleges he was "negligently arraigned sixty-two hours later".  (Pet.; Doc. No. 1 at p. 9.)  Petitioner contends "the erroneous delay between arrest and appearance before a magistrate judge" violates his rights under the Sixth and Fourteenth Amendments and California law.  (Pet.; Doc. No. 1 at p. 9.)

In addition, Petitioner contends he is entitled to an evidentiary hearing, an "order to show cause hearing," or a "writ of probable cause hearing" on this issue because he has "legally and lawfully stated a 'Prima Facie' showing".  (Pet.; Doc. No. 1 at p. 9.)  Lastly, Petitioner claims he is entitled to be "resentenced under a 'sentence modification' pursuant to the agreed upon plea bargain agreement" and pursuant to California Penal Code § 1487(2).  (Pet.; Doc. No. 1 at p. 9.)

**2. Respondent's Rebuttal**

Respondent argues Petitioner cannot raise this claim after he intelligently and voluntarily entered into the plea agreement because "[a] guilty plea and ensuing conviction comprehend all the factual and legal elements necessary to sustain a binding final judgment of guilt and a lawful sentence."  (Mem. P. & A.; Doc. No. 5-1 at p. 10:16-17.)  As a result, Respondent continues, Petitioner may only attack the voluntary and intelligent character of the plea by and through a

1   claim of ineffective assistance of counsel relating to the plea advice,[5] and he may not thereafter

2   raise independent claims relating to the deprivation of constitutional rights that occurred before the

3   entry of the plea.  (Mem. P. & A.; Doc. No. 5-1 at p. 10:19-22.)

4        **3.  Relevant Law**

5        As mentioned previously, "[w]hen a criminal defendant has solemnly admitted in open

6   court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise

7   independent claims relating to the deprivation of constitutional rights that occurred prior to the

8   entry of the guilty plea."  *Tollett*, 411 U.S. at 267.  One who intelligently and voluntarily pleads

9   guilty to a criminal charge "may not subsequently seek federal habeas corpus relief on the basis of

10   pre-plea constitutional violations."  *Moran*, 57 F.3d at 700; *Mitchell v. Superior Court*, 632 F.2d

11   767, 769 (9th Cir. 1980) (same); *see Caperell*, 938 F.2d at 977 ("[A] guilty plea generally waives

12   all claims of constitutional violation occurring before the plea . . .")  After pleading guilty,

13   Petitioner "may only attack the voluntary and intelligent character of the guilty plea by showing

14   that the advice he received from counsel was not within the range of competence demanded of

15   attorneys in criminal cases."  *Moran*, 57 F.3d at 700 (quoting *Tollett*, 411 U.S. at 267).

16        In addition, federal habeas corpus relief  "does not lie for errors of state law." *Lewis v.*

17   *Jeffers*, 497 U.S. 764, 780 (1990); *accord Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Matylinsky*

18   *v. Budge*, 577 F.3d 1083, 1094 (9th Cir. 2010).  "In conducting habeas review, a federal court is

19   limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United

20   States." *Estelle*, *supra*, 502 U.S. at 67-68.

21        Specifically, arraignment procedures are controlled by state law, and as such, federal

22   habeas claims involving arraignment delay fall outside the scope of federal habeas review.  *See*

23   *Ahlswede v. Wolff*, 720 F.2d 1108, 1110 (9th Cir. 1983) (per curiam) (arraignment delay claim not

24   cognizable on federal habeas review because state law controls application of state statute on

25   arraignment), *cert. denied*, 469 U.S. 873 (1984); *see also Hernandez v. Schneckloth*, 425 F.2d 89,

26   91 (9th Cir. 1970) (per curiam) (although state court found unnecessary delay before arraignment,

27   absent a showing of prejudice, an illegal detention is not grounds for habeas relief).

28

---

[5] *See* Section V.A.3, *supra*, of this Report and Recommendation.

**4. Recommendation**

Petitioner's claim of unconstitutional arraignment delay was raised for the first time after Petitioner entered his no contest plea.  As mentioned previously, the law involving claims of pre-plea constitutional violations is clear: one who intelligently and voluntarily pleads guilty to a criminal charge may not seek federal habeas relief for pre-plea constitutional violations, unless he successfully attacks the voluntary and intelligent nature of the plea on ineffective assistance of counsel grounds.

Here, as previously explained, Petitioner has not shown his plea was involuntary and unintelligent.  Nor has he shown his counsel's performance adversely affected the plea process.  In exchange for receiving a more lenient sentence, Petitioner relinquished several enumerated constitutional rights, as well as all claims arising before he entered the plea.  As a product of negotiation, Petitioner's plea represents a clean break from the chain of events that began when he was initially arrested and ended on the date of his plea and immediate sentencing.  Thus, for this reason alone, Petitioner's claim must fail under <u>Tollett</u>.

Second, while Petitioner claims the alleged violation is federal in nature, the forty-eight hour rule he references is a state law.  *See* CAL. PENAL CODE § 825(a) ("the defendant shall in all cases be taken before the magistrate without unnecessary delay, and, in any event, within 48 hours after his or her arrest.")  As mentioned previously, federal habeas corpus relief "does not lie for errors of state law." *Lewis*, 497 U.S. at 780.  Thus, Petitioner's claim is not federally cognizable, as a result, his claim fails on this ground as well.

Therefore, it is recommended federal habeas relief be **DENIED** on this claim.

**C. Pre-Charge Identification Error**

**1. Summary of Claims**

*a. Photographic Line-Up*

In Case No. SCS214181, Petitioner contends his "14th Amendment procedural due process was willfully violated at the 6-pack photo lineup when the presumption of guilt was used as a basic fact in the procedure."  (Pet.; Doc. No. 1 at p. 10.)  Petitioner contends the state's eyewitness was only "sixty percent sure of the actual positive I.D. of the alleged suspect accused of the

offense," (Pet.; Doc. No. 1 at p. 10), but that Chula Vista police officers used "coercion,

intimidation, and threatening tactics against the alleged witnesses for testimony . . .". (Pet.; Doc.

No. 1 at p. 10.)  As a result, Petitioner claims a violation of his procedural due process and equal

protection rights under the Fourteenth Amendment of the U.S. Constitution and the California

Constitution.  (Pet.; Doc. No. 1 at p. 10.)

### b. Curbside Line-Up

Additionally, Petitioner contends National City police officers violated Petitioner's

procedural due process and equal protection rights under the Fourteenth Amendment when the

officers denied Petitioner's request for counsel to be present at the initial curbside line-up on

September 25, 2007.[6]  (Pet.; Doc No. 1 at p. 10.)  In addition, Petitioner contends the officers'

willful violation of "procedure, protocol, and administrative policies . . . [and] abuse of authority

and discretion," violated Petitioner's due process and equal protection under the Fourteenth

Amendment and the California Constitution.  (Pet.; Doc. No. 1 at p. 10.)

**2. Respondent's Rebuttal**

Respondent contends Petitioner cannot raise the claim that there was error in the curbside

line-up and photographic display because the alleged error occurred before Petitioner's plea.

(Mem. P. & A.; Doc. No. 5-1 at p. 11:11-13.)  As a result, Respondent argues the Court must reject

Petitioner's claim.  (Mem. P. & A.; Doc. No. 5-1 at p. 11:14.)

**3. Relevant Law**

---

[6] In his Petition, Petitioner claims the initial curbside lineup took place on September 12, 2007. (Pet.; Doc. No. 1 at p. 10.)  After review of record, there is no evidence indicating the curbside lineup took place on September 12, 2007.  The transcript of the November 28, 2007 preliminary hearing in Case No. SCS212181, which is contained in Lodgments 7, 9 and 11, presents direct-examination and cross-examination testimony of two witnesses and a police officer.  Mr. Carrasco's testimony indicates Mr. Carrasco – the witness to the second robbery involving Petitioner at about 11 pm on September 25, 2007 – participated in a curbside lineup identification procedure within forty-five minutes of the robbery.  (Lodgment 7 at pp. 22:25-23:22, 25:16-19.)  National City police officer Donald Geidel testified similarly.  (Lodgment 7 at pp. 34:23-35:11.)  Further, Mr. Escoto testified he participated in a photo identification on the morning of September 26, 2007.  (Lodgment 7 at p.7:3-5, 10:20-22.)  In addition, the Charge Summary accompanying the District Attorney's Information indicates the robberies took place on September 25, 2007 (Clerk's Tr.; Lodgment 1 at p. 78), and the District Attorney's Factual Basis of Plea states police officers stopped Petitioner in his car on September 25, 2007, a short distance away from the location of the robbery that same night.  Considering this information, the Court (1) concludes Petitioner made a mistake regarding the date of the curbside lineup and (2) will use the September 25, 2007 date as the date of the lineup in question.

1   As mentioned in the previous claim, one who intelligently and voluntarily pleads guilty to

2   a criminal charge "may not subsequently seek federal habeas corpus relief on the basis of pre-plea

3   constitutional violations." *Moran*, 57 F.3d at 700. "When a criminal defendant has solemnly

4   admitted in open court that he is in fact guilty of the offense with which he is charged, he may not

5   thereafter raise independent claims relating to the deprivation of constitutional rights that occurred

6   prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267; *see Journigan v. Duffy*, 552 F.2d

7   283, 287-88 (9th Cir. 1977) (explaining a guilty plea precludes federal habeas relief not because a

8   defendant thereby waives his right to seek it, but because a guilty plea admits factual guilt).

9   Petitioner "may only attack the voluntary and intelligent character of the guilty plea by showing

10  that the advice he received from counsel was not within the range of competence demanded of

11  attorneys in criminal cases." *Moran*, 57 F.3d at 700 (quoting *Tollett*, 411 U.S. at 267).

12      With respect to the Sixth Amendment right to counsel, the U.S. Supreme Court has clearly

13  stated the right to counsel under the Sixth Amendment attaches only "'at or after the initiation of

14  adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing,

15  indictment, information, or arraignment.'" *Moore v. Illinois*, 434 U.S. 220, 226 (1977) (quoting

16  *Kirby*, *supra*, 406 U.S. at 689); *see also Jordan v. Ducharme*, 983 F.2d 933, 937 (9th Cir. 1993)

17  ("to determine whether a pretrial event implicates the right to counsel, a court must consider

18  whether cross-examination can reveal any improper procedures that occur in counsel's absence.").

19  Thus, a pre-charge photographic lineup is not a critical stage in a criminal proceeding where

20  counsel's presence is constitutionally required to (a) protect the defendant from unnecessarily and

21  unconstitutionally suggestive police tactics and (b) prevent a waiver of available defenses. *See*

22  *U.S. v. Ash*, 413 U.S. 300, 317 (1973); *U.S. v. Wade*, 388 U.S. 218, 228 (1967) (in non-critical

23  stages "there is minimal risk that . . . counsel's absence at such stages might derogate from [the]

24  right to a fair trial"). In short, "the Sixth Amendment does not grant the right to counsel at

25  photographic displays conducted by the Government for the purpose of allowing a witness to

26  attempt an identification of the offender." *Ash*, 413 U.S. at 321; *accord U.S. v. Barker*, 988 F.2d

27  77, 78 (9th Cir. 1993).

28  ///

**4.  Recommendation**

Petitioner's conviction results from his no contest plea.  Like the immediately preceding claim, Petitioner raises the instant due process claim of unconstitutional curbside and photographic line-up error after he entered his no contest plea.  As noted above, the Supreme Court has made clear when a defendant is convicted pursuant to a guilty or no contest plea, the defendant is barred from obtaining collateral relief based on errors preceding the plea.  *Tollett*, 411 U.S. at 267; *see also Broce*, 488 U.S. at 569 ("[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence.")  Petitioner may attack only the voluntary and intelligent nature of the plea on ineffective assistance of counsel grounds.  Thus, because Petitioner's claim relates to pre-plea constitutional deprivations because he has failed to successfully attack the voluntary and intelligent nature of the plea on ineffective assistance of counsel grounds,[7] the claim is barred under *Tollett*.

Specifically, Petitioner's claim is barred under *Tollett* because the validity of Petitioner's conviction does not rest in any way on information produced by identification procedures that may have been improperly administered.  Rather, the validity of Petitioner's conviction rests entirely on Petitioner's no contest plea, which constitutes an admission of factual guilt.  *See Journigan*, *supra*, 552 F.2d at 287-88.  Furthermore, in exchange for waiving the right to raise any and all pre-plea constitutional violations, Petitioner received a determinate term of twenty-seven years instead of the maximum sentence of 210-years-to-life.  (Lodgment 13 at p. 2:24-3:1.)  Like other claims relating to the deprivation of constitutional rights, Petitioner's instant due process claim involving identification procedures is, therefore, barred under *Tollett* by virtue of Petitioner's plea.  *See Ortberg v. Moody*, 961 F.2d 135, 136-38 (9th Cir. 1992) (guilty plea barred habeas claim alleging an unlawful search); *Moran*, 57 F.3d at 700 (finding *Tollett* barred ineffective assistance of counsel claim); *see also U.S. v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996) (ineffective assistance of counsel claim based on counsel's pre-plea conduct barred by *Tollett*).

Second, as mentioned previously, the California Court of Appeal on collateral review

---

[7] *See* Section V.A.4, *supra*, of this Report and Recommendation.

adopted the Superior Court's reasoning and denied the petition in a one-page decision.  The

Superior Court found Petitioner failed to allege sufficient facts to support his claim.  The court

concluded:

> Petitioner has not met his burden with respect to his second petition for writ of habeas corpus.  Petitioner provides no evidence that supports any of his claims in his second petition.  The documents attached to Petitioner's second petition, e.g., the Reporter's Transcript of the January 30, 2008 sentencing hearing, do not support any of Petitioner's claims.  Petitioner's own unsubstantiated self-serving statements in his second petition do not provide a sufficient basis upon which to prove his claims. [Citing *In re Alvernaz*, 2 Cal. 4th 924, 945 (1992)].  Thus, Petitioner has not made a *prima facie* showing in support of his claims in his second petition.
> In addition, a review of the record discloses that . . . there was no deprivation of Petitioner's due process rights as to the line-up.

(Lodgment 8 at p. 3:9-17.)

As explained previously, the Court's review under the AEDPA is limited to whether the

state court decision was contrary to, or an unreasonable application of, clearly established federal

law as determined by the U.S. Supreme Court.  Here, because Petitioner's instant claim was raised

after he entered his no contest plea, the clearly established federal law against which the

reasonableness of the state court decision must be measured is the *Tollett* rule.  After review of the

record, the Court finds the state court's decision to deny Petitioner's claim did not run afoul of

*Tollett* because under *Tollett*, as explained above, Petitioner's claim is barred.

Third, absence of counsel at the curbside lineup does not violate Petitioner's due process

rights because the curbside identification and photo display at issue in this case were conducted

before Petitioner was formally charged with the crimes.  Thus, the right to counsel had not

attached at this point.  Therefore, for this additional reason, Petitioner's claim must fail under *Ash*,

*supra*.

Finally, to the extent Petitioner's objections to the curbside identification are based on

violations of the California Constitution or violation of the National City Police Department's

"procedure, protocol, and administrative policies," Petitioner's claim is not cognizable on federal

habeas corpus review.

Therefore, it is recommended federal habeas relief be **DENIED** on this claim.

1   **D.  Sentencing Error Regarding Imposition of the Upper Term on Count 1A**

2         **1.  Summary of Claims**

3         Petitioner contends he should have received the middle term of three years, not the upper

4   term of five years because he did not have a jury trial on the upper term aggravating factors.  (Pet.;

5   Doc. No. 1 at p. 7.)  By failing to provide Petitioner a jury trial for this purpose, Petitioner

6   contends the sentencing court violated California law and "willfully abuse[d] its authority and

7   legal discretion by illegally imposing the upper term of five years double to ten years on Count 1A

8   in error without any aggravating facts/factors proven to be true by a jury in error."  (Pet.; Doc. No.

9   1 at p. 7.)

10        In particular, Petitioner contends "under the California's (DSL) Determine Sentencing Law

11  the sentencing court is suppose [sic] to legally by law impose the med term of imprisonment

12  unless he or she finds by a preponderance of the evidence that there are mitigating and/or

13  aggravating facts that legally justifie [sic] a low med or high term of imprisonment . . ."  (Pet.;

14  Doc. No. 1 at p. 7.)

15        **2.  Respondent's Rebuttal**

16        Respondent contends Petitioner's claim should be rejected because the "trial court had 10

17  prior convictions with which to impose the upper term of five years based on recidivism, a well

18  recognized exception to the rule of a jury trial being required for imposing the upper term."

19  (Mem. P. & A.; Doc. No. 5-1 at p. 11:19-21.)  Moreover, Respondent continues, Petitioner agreed

20  to a specific term.  Thus, the sentence cannot be vindictive when it imposes the very sentence to

21  which Petitioner agreed.  (Mem. P. & A.; Doc. No. 5-1 at p. 12:2-3.)  Further, for the reasons set

22  forth in Section V.A.2, *supra*, of this Report and Recommendation, Respondent contends

23  Petitioner's claim should be denied.

24        **3.  Relevant Law**

25        "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime

26  beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a

27  reasonable doubt."  *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (emphasis added).  The

28  Supreme Court has held the "statutory maximum" for increasing a penalty for a crime "is the

maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant . . .* ".  *Blakely v. Washington*, 542 U.S. 296, 303 (2004) (emphasis in original).  Specifically, the Supreme Court recently held the middle term, not the upper term, is the "relevant statutory maximum" under California's Determinate Sentencing Law ("DSL"), and an upper term sentence could be imposed only if the trial judge found an aggravating circumstance.  *Cunningham v. California*, 549 U.S. 270, 288 (2007).

In response to *Cunningham*, the California Legislature amended the DSL to eliminate the requirement that trial judges find an aggravating circumstance before imposing an upper term sentence.  See CAL. PENAL CODE § 1170(b); *see also Butler v. Curry*, 528 F.3d 624, 652 n.20 (9th Cir. 2008), cert. denied, ___ U.S. ___, 129 S. Ct. 767 (2008) ("Following the decision in *Cunningham*, the California legislature amended its statutes such that imposition of the lower, middle, or upper term is now discretionary and does not depend on the finding of any aggravating factors.").  Instead, "the choice of the appropriate term" now rests "within the sound discretion of the court."  CAL. PENAL CODE § 1170(b).

The Ninth Circuit has recognized the Supreme Court has not defined "the precise contours" of the prior conviction exception and "*Butler* does not represent clearly established federal law as determined by the Supreme Court."  *See Kessee v. Mendoza-Powers*, 574 F.3d 675, 677, 679 (9th Cir. 2009). Thus, the Ninth Circuit has held a state court's interpretation of the prior conviction exception as being broader than that in *Butler* is neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the U.S. Supreme Court. *See Kessee*, 574 F.3d at 679 ("[b]ecause the Supreme Court has not given explicit direction and because the state court's interpretation is consistent with many other courts' interpretations, we cannot hold that the state court's interpretation was contrary to, or involved an unreasonable application of, Supreme Court precedent.").

**4. Recommendation**

Here, the circumstances used by the state court judge to impose Petitioner's sentence, including the imposition of the upper term on Count One in Case No. SCD200184, included Petitioner's admission, Petitioner's plea of no contest, and Petitioner's stipulation.  Under

- 27 -

*Apprendi* and *Blakely*, the trial judge properly imposed the statutory maximum consisting of the upper term because the judge based his sentence on Petitioner's admissions to prior convictions and stipulated plea bargain.  Relevant here are the following portions of Petitioner's Change of Plea and Immediate Sentencing transcript:

COURT: [Petitioner] has several prior strike convictions; correct?

ADA BENNETT: Yes.

COURT: Do you stipulate to that?

MS. WOLF: Yes, your honor.

MR. PEDRETTI: Yes, your honor.

COURT: In case ending 184, how do you plead in Count 1 to a violation of Penal Code section 211?

DEFENDANT: No contest.

COURT: How do you plead in Counts 4, 5, 6, and 7 to a violation of each of those code sections of Penal Code section 211?

DEFENDANT: No contest.

COURT: Do you admit the prison priors and strike priors which are alleged in the Complaint slash Information?

DEFENDANT: Yes.

COURT: As to case ending 181, how do you plead in Counts 1 and 2 to a violation of Penal Code section 211?

DEFENDANT: Yes.

COURT: No contest?

DEFENDANT: No contest.

COURT: Do you admit the additional allegation under Penal Code section 12022.1 (B)?

DEFENDANT: No contest.

[. . .]

COURT: . . . Do [sic] admit the strike prior under CR129146?  Actually, there are 11 strike priors from 1992.  Just admit?

1    DEFENDANT: Yes.

2    [. . .]

3    COURT: Do you admit [in Case No. SCD200184] the serious felony prior which is also

4    there?

5    DEFENDANT: Yes.

6    [. . .]

7    COURT: . . . Count 1 [in Case No. SCD200184], *it is stipulated the defendant will be*

8    *sentenced to the upper term of 5 years.*  That will be doubled per the strike law for 10

9    years.  Count 1 doubled per the strike law for 10 years.

10   (Rep. Appeal Tr.; Lodgment 13 at pp. 4:2-27, 5:2-4, 5:15-17, 6:4-7) (emphasis added).

11       Here, on state collateral review, the trial court concluded, ". . . Petitioner may not be heard

12   on a sentencing error in that Petitioner obtained the total prison term of 27 years for both cases that

13   was agreed to under the plea bargain. . . .  Also, a review of the record discloses no sentencing

14   error." (Lodgment 8 at p. 3:20-23.)

15       The Court notes the Supreme Court has not held *Cunningham* applies to sentences

16   resulting from plea bargains.  This means two things relevant to the Court's analysis.  First, the

17   relevant statutory maximum under California's DSL is not limited to the middle term.  Second, the

18   rule articulated in *Blakely* still applies, namely "[w]hen a defendant pleads guilty, the State is free

19   to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant

20   facts or consents to judicial factfinding."  *Blakely*, 542 U.S. at 310.

21       Here, at sentencing Petitioner pled guilty to the charged offenses and stipulated to the

22   relevant facts of each case, particularly the prior strike convictions, the prison prior, and the

23   serious felony prior.  Accordingly, the state court judge sentenced Petitioner to the upper term on

24   Count One in Case No. SCD200184, stating, "Count 1, *it is stipulated* the defendant will be

25   sentenced to the upper term of 5 years."  (Lodgment 13 at p. 6:4-5) (emphasis added.)  As a result,

26   upper term imposition on Count One in Case No. SCD200184 was proper, and the Superior Court

27   reasonably denied Petitioner's claim.

28       Therefore, it is recommended federal habeas relief be **DENIED** on this claim.

**E.  The Trial Court's Failure to Stay Certain Counts under California Penal Code section 654**

### 1.  Summary of Claims

Petitioner contends several counts fall under "possible consideration" of Penal Code section 654 because "there was no physical evidence" or reliable eyewitness identification that Petitioner committed the robberies.  (Pet.; Doc. No. 1 at p. 8.)  Further, Petitioner contends there was no probable cause he was in possession of any stolen property from the robberies.  (Pet.; Doc. No. 1 at p. 8.)  Since there was "only one alleged intent" as to Count 1A, Petitioner argues six counts (4A, 5A, 6A, 7A, 1B, and 2B) must be stayed under Penal Code section 654.  (Pet.; Doc. No. 1 at p. 8.)

In addition, Petitioner contends section 654 "prohibits the court from punishing the Petitioner more than once for the same alleged act or omission which would fall under the Double Jeopardy Clause of U.S. Constitution."  (Pet.; Doc. No. 1 at p. 8.)  Further, Petitioner contends the trial court's failure to stay under section 654 the previously mentioned counts was a "fundamental miscarriage of justice" and grossly disproportional under the Eighth Amendment.  (Pet.; Doc. No. 1 at p. 8.)

### 2.  Respondent's Rebuttal

Respondent contends Petitioner's claim must be rejected because it is not a federal claim for which relief may be granted.  (Mem. P. & A.; Doc. No. 5-1 at p. 12:7.)

### 3.  Relevant Law

As already mentioned,  federal habeas corpus relief  "does not lie for errors of state law." *Lewis*, 497 U.S. at 780; *accord Estelle*, 502 U.S. at 67; *Matylinsky*, *supra*, 577 F.3d at 1094.  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle*, 502 U.S. at 67-68.

Specifically, a claim in federal court that multiple punishment violates Penal Code section 654 fails to state a federal question.  *See Watts v. Bonneville*, 879 F.2d 685, 687 (9th Cir. 1989) (holding petitioner's claim that the state court violated Penal Code section 654 was not cognizable under AEDPA); *see also Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994) ("Absent a showing

1  of fundamental unfairness, a state court's misapplication of its own sentencing laws does not

2  justify federal habeas relief"); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994)

3  (petitioner's claim of state court error in imposing consecutive sentences was not cognizable);

4  *Hendricks v. Zenon*, 993 F.2d 664, 674 (9th Cir. 1993) (petitioner's claim that the state court was

5  required to merge his convictions was not cognizable).

6       According to the California Supreme Court, section 654 allows "multiple punishments for

7  separate crimes of violence committed against separate victims."  *Morris v. Scribner*, 2009 U.S.

8  Dist. LEXIS 108236, 16 (C.D. Cal. 2009) (citing *People v. Price*, 1 Cal. 4th 324, 492 (1991)); *see*

9  *also People v. Beamon*, 8 Cal. 3d 625, 638 n.10 (1973) ("the Legislature could not have intended

10  that section 654 be applicable where the course of conduct results in acts of violence which

11  constitute separate violations as to separate individuals.").  "Robbery is violent conduct warranting

12  separate punishment for the injury inflicted on each robbery victim."  *People v. Hall*, 83 Cal. App.

13  4th 1084, 1090 (2000) (internal quotation marks and citations omitted).  Federal courts defer to the

14  state courts' construction of state sentencing statutes.  *Morris*, 2009 U.S. Dist. LEXIS 108236, 17

15  (citing *Missouri v. Hunter*, 459 U.S. 359, 368 (1983).

16       **4. Recommendation**

17       Here, Petitioner's claim concerns a violation of California Penal Code section 654.

18  Specifically, the Ninth Circuit has held Petitioner's claim fails to state a federal question

19  appropriate for the Court to entertain on federal habeas review.  *See Watts*, *supra*, 879 F.2d at 687.

20  As a result, Petitioner's claim is not cognizable under the Court's review.

21       Further, Petitioner pled guilty to committing several robberies, which involved several

22  separate victims.  Because each robbery warrants separate punishment under section 654,

23  Petitioner's sentence does not run afoul of section 654.  Thus, the Superior Court's decision that "a

24  review of the record discloses no sentencing error," (Lodgment 8 at p. 3:22-23), was not

25  objectively unreasonable.  As a result, Petitioner's claim must fail.

26       Therefore, it is recommended federal habeas relief be **DENIED** on this claim.

27  ///

28  ///

1    **F.  Insufficient Evidence Regarding Mental Competency to Stand Trial**

2         **1.  Summary of Claims**

3         Petitioner contends the court ordered him to a "mental psychiatric examination treatment"

4    and he was given "antipsychotic medications" for "bizarre behavior, delusions actions [sic]."

5    (Pet.; Doc. No. 1 at p. 11.)  Petitioner contends he was "medically diagnosed with various forms of

6    paranoia, schizophrenia, and antisocial personality disorder," and as a result, was "medically

7    incompetent to stand trial and/or agree to a plea bargain," which violated his Sixth and Fourteenth

8    Amendment rights to a "fair impartial trial by jury".  (Pet.; Doc. No. 1 at p. 11.)  In addition, by

9    trying him for the offenses, Petitioner contends the trial court violated his procedural due process

10   rights and California Penal Code section 1367(a).

11        **2.  Respondent's Rebuttal**

12        Respondent argues Petitioner's claim must fail because he raises it after he entered into a

13   plea agreement.  (Mem. P & A.; Doc. No. 5-1 at p. 12:15-16.)  Additionally, Respondent contends

14   nothing in the record indicates Petitioner was incompetent or misunderstood the proceedings.

15   (Mem. P. & A.; Doc. No. 5-1 at p. 13:6-7.)  In fact, Respondent continues, the trial court asked

16   Petitioner a series of questions to which Petitioner appropriately responded.  (Mem. P. & A.; Doc.

17   No. 5-1 at p. 13:5-6) (citing Rep. Tr.; Lodgment 13 at pp. 1-5.)  As a result, Respondent argues

18   Petitioner's claim must be denied.  (Mem. P. & A.; Doc. No. 5-1 at p. 13:24-26.)

19        **3.  Relevant Law**

20        Trial or conviction of an incompetent defendant violates the due process clause of the

21   Fourteenth Amendment.  *Indiana v. Edwards*, 554 U.S. 164, 170 (2008); *Godinez v. Moran*, 509

22   U.S. 389, 396 (1993); *Medina v. California*, 505 U.S. 437, 439 (1992); *Drope v. Missouri*, 420

23   U.S. 162, 171 (1975); *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Bishop v. U.S.*, 350 U.S. 961

24   (1956).  The competency standard to plead guilty is the same as that to stand trial.  *Doe v.*

25   *Woodford*, 508 F.3d 563, 571 (9th Cir. 2007) (citing *Miles v. Stainer*, 108 F.3d 1109, 1112 (9th

26   Cir. 1997); *see Godinez*, 509 U.S. at 398 (rejecting the notion that "competence to plead guilty . . .

27   must be measured by a standard that is higher than (or even different from) the *Dusky* standard.").

28        As a general matter, the due process standard for competency requires a defendant to have

the "capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in the preparation of his defense." *Drope*, *supra*, 420 U.S. at 171; *see Dusky v. U.S.*, 362 U.S. 402, 402 (1960) (per curiam) ("the test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him.").

The due process standard for competency involving a guilty plea is whether "mental illness has substantially impaired his or her ability to make a reasoned choice among the alternatives presented and to understand the nature and consequences of the waiver." *Chavez v. U.S.*, 656 F.2d 512, 518 (9th Cir. 1981) (citing *U.S. v. Moore*, 599 F.2d 310 (9th Cir. 1979)). In addition, when evidence before the trial court raises a "bona fide doubt" regarding a defendant's competency either before or during trial, the judge *sua sponte* must order a competency hearing. *Pate*, *supra*, 383 U.S. at 385; *see U.S. v. Lewis*, 991 F.2d 524, 527 (9th Cir. 1993) ("A good faith doubt about a defendant's competence arises if there is substantial evidence of incompetence.") (citing *Chavez*, *supra*, 656 F.2d at 517).

Under California law, a criminal defendant is incompetent and may not be "tried or adjudged to punishment" if "as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of the defense in a rational manner." CAL. PENAL CODE § 1367(a) (Deering 2010). California Penal Code section 1368 requires a competency hearing "[i]f, during the pendency of an action and prior to judgment, a doubt arises in the mind of the judge as to the mental competence of the defendant . . .".

### 4. Recommendation

Petitioner's alleged incompetency at the time of plea is unsupported by the record. First, as mentioned previously, Valerie Rice, Ph.D., a San Diego County certified psychiatric examiner appointed by the trial court to assess Petitioner's competency for trial, concluded Petitioner was neither suffering from a mental illness nor incompetent to stand trial. (Clerk's Tr.; Lodgment 1 at p. 25-26.) Based upon her medical findings, including a forty-five minute personal examination of the Petitioner, Dr. Rice affirmatively concluded Petitioner was competent to stand trial. (Clerk's

1    Tr.; Lodgment 1 at p. 26.)

2          Second, during the change of plea hearing, the trial court judge asked Petitioner a series of

3    questions related to competency and the waiver of certain constitutional rights, and Petitioner

4    answered the questions appropriately.  (Rep. Appeal Tr.; Lodgment 13 at p. 2:6-20.)  Relevant

5    here is the following portion of the colloquy, some of which was referred to in Section V.A.4,

6    *supra*, of this Report and Recommendation:

7          COURT: Sir, have you had any alcohol or drugs within the last 24 hours which would

8                impair your ability to understand what is going on in court?

9          DEFENDANT: No.

10         COURT: Have you had enough time to talk to your lawyer about the charges and any

11               potential defenses?

12         DEFENDANT: Yes.

13         COURT: Do you understand you have the following constitutional rights: the right to a

14               speedy and public jury trial, the right to confront and cross-examine witnesses, remain

15               silent, and present evidence.  Do you understand those rights?

16         DEFENDANT: Yes.

17         COURT: Do you waive those rights?

18         DEFENDANT: Yes.

19         COURT: Anybody force you to get you to plead guilty today?

20         DEFENDANT: No.

21   (Rep. Appeal Tr.; Lodgment 13 at p. 2:6-23.)

22         Based on the foregoing, the Court finds the state courts' decision to uphold the trial judge's

23   determination that Petitioner understood the nature of the criminal proceedings was neither

24   objectively unreasonable nor contrary to the competency standard as articulated by the U.S.

25   Supreme Court in *Dusky v. U.S.*, *supra* and repeated in *Drope v. Missouri*, *supra*.  Additionally,

26   the record indicates the state court judge ordered a competency hearing when a *bona fide* doubt

27   regarding Petitioner's mental competency arose in his mind, as required by *Pate v. Robinson*,

28   *///*

1  *supra.*  As a result, Petitioner's claim is without merit must be denied.

2      Therefore, it is recommended federal habeas relief be **DENIED** on this claim.

3                                  **VI.**

4                  **CONCLUSION AND  RECOMMENDATION**

5      For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** the Court issue an

6  Order: (1) approving and adopting this Report and Recommendation, and (2) denying the Petition.

7      **IT IS ORDERED** that no later than **April 1, 2011**, any party to this action may file written

8  objections with the Court and serve a copy on all parties.  The document should be captioned

9  "Objections to Report and Recommendation."

10      **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court

11  and served on all parties no later than **April 22, 2011**. The parties are advised that failure to file

12  objections within the specified time may waive the right to raise those objections on appeal of the

13  Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951

14  F.2d 1553, 1156 (9th Cir. 1991).

15      **IT IS SO ORDERED.**

16  DATED: March 10, 2011

                                   Hon. William McCurine, Jr.
                                   U.S. Magistrate Judge
                                   United States District Court